UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

33 EAST 60TH STREET, INC. d/b/a          :          08 Civ. 4147 (RJS) (GWG)
Scores East,
                                                          :
                    Plaintiff,
                                                          :
-against-
                                                          :
NEW YORK STATE LIQUOR AUTHORITY,
DANIEL B. BOYLE, individually,                :          **DECLARATION**
LAWRENCE J. GEDDA, individually,
NOREEN HEALEY, individually, and the          :
CITY OF NEW YORK,
                                                          :
                    Defendants.
                                                          :

-------------------------------------------------------------X

JOEL GRABER, an attorney duly admitted to practice in the State of New York and

before this Court, under penalty of perjury declares:

1.      I am an Assistant Attorney General of the State of New York, of counsel to

Andrew M. Cuomo, Attorney General of the State of New York, attorney for defendants the New

York State Liquor Authority, Daniel B. Boyle, Lawrence J. Gedda and Noreen Healey ("State

defendants").

2.      I am respectfully submitting this declaration in opposition to plaintiff's motion for

an order, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, preliminary enjoining

the New York State Liquor Authority ("SLA") from enforcing the New York State Alcoholic

Beverage Control Law with respect to plaintiff, and in support of State defendants' motion for an

order and judgment, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, dismissing

the complaint in this action.

3.    The purpose of this declaration is to furnish this Court with the following exhibits

in opposition to plaintiff's preliminary injunction motion, and in support of State defendants'

motion to dismiss, all of which are publically-filed administrative or judicial documents subject

to judicial notice:

Ex. A  –    Complaint filed on May 1, 2008.

Ex. B  –    State defendants' answer filed on June 13, 2008.

Ex. C  –    City of New York answer filed on May 27, 2008.

Ex. D  –    Emergency Summary Order of Suspension, dated February 21, 2007.

Ex. E  –    ALJ decision dated February 4, 2008.

Ex. F  –    SLA determination dated March 6, 2008.

Ex. G  –    Order of the Supreme Court of the State of New York, Appellate Division,

First Department, denying a stay, dated April 15, 2008.

Ex. H  –    SLA determination dated April 17, 2008.

Ex. I  –    Order of the Supreme Court of the State of New York, Appellate Division,

First Department, denying reconsideration, dated April 29, 2008.

Ex. J  –    SLA notice of charges dated May 2, 2008.

I hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746(2), that the

foregoing is true and correct. Executed on July 8, 2008.

JOEL GRABER (JG-3337)
Assistant Attorney General
Special Litigation Counsel

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

333 EAST 60TH STREET, INC., d/b/a
Scores East,

               Plaintiff,

      -against-

NEW YORK STATE LIQUOR AUTHORITY,
DANIEL B. BOYLE, individually,
LAWRENCE J. GEDDA, individually,
NOREEN HEALEY, individually, and the
CITY OF NEW YORK,

               Defendants.

------------------------------------------------------x



' 08 Civ.   (   )

**COMPLAINT**

**08 CIV. 4147**

**Jury Trial Demanded**

       Plaintiff 333 EAST 60TH STREET, INC, d/b/a Scores East, by its attorneys Lovett

& Gould, LLP, for its complaint respectfully states:

### NATURE OF THE ACTION

       1. This is an action for permanent injunctive relief with respect to on-going

violations of Plaintiff's rights as guaranteed by the First Amendment to the United States

Constitution, 42 U.S.C. §1983.

### JURISDICTION

       2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331, 1343.

Ex. A

## THE PARTIES

3. Plaintiff 333 EAST 60TH STREET INC d/b/a "Scores East" (hereinafter "Scores East") is a New York domestic business corporation with offices for the conduct of business situated at 333 East 60th Street, New York, New York. At that premises Scores East operates a restaurant and gentlemen's club featuring, by way of First Amendment protected expressive activity, topless dancers. The principals of Scores East are also the principals of Go West Entertainment, Inc., a separate New York domestic corporation which for years has operated Scores West, a gentlemen's club featuring the same First Amendment expressive entertainment at premises known as 533-535 West 27th Street, New York, New York.

4. Defendant NEW YORK STATE LIQUOR AUTHORITY (hereinafter "SLA"), which is sued only for prospective injunctive relief, is an agency of the State of New York with authority over the issuance/revocation/suspension of liquor licenses in premises such as Scores East and Scores West. Defendants DANIEL B. BOYLE, LAWRENCE J. GEDDA, AND NOREEN HEALEY, each of whom is sued in his/her individual capacities for prospective injunctive relief, are respectively the Chairman of the SLA and two SLA commissioners.

5. Defendant CITY OF NEW YORK (hereinafter "City") is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State. During the tenure of now-former New York City Mayor Rudolph Giuliani the City publicly took the position that clubs featuring female topless expressive entertainment should prospectively be required to conduct business only on the West side of Manhattan. As a result Scores West was established. Scores East, by reason of its pre-

2

existing business operations, continued doing business on Manhattan's east side.
Thereafter the City and the SLA determined that all clubs in Manhattan featuring such
entertainment should be forced to shut down by reason of their First Amendment
protected activity.

## THE FACTS

6. Commencing during the approximately twelve month period preceding January
24, 2007, corrupt New York City undercover police officers assigned to the Manhattan
South Vice Enforcement Division began frequenting Scores West and abusing their
authority: i) did not pay otherwise required admission fees; ii) consumed but did not pay
for alcoholic beverages; and iii) consumed but did not pay for food.

7. During that same period of time the City determined to implement a
plan, to be carried out by members of its Police Department, calculated to coerce Scores
West's cessation of business because of its First Amendment protected expressive
activity.

8. In furtherance of that plan and at the direction of the City's Police
Commissioner dozens of police officers were routinely assigned to 27th and/or 28th Street
at Tenth and Eleventh Avenues daily from approximately 11:30 P.M. to 4:00 A.M. for
the specific objectives of: i) denying vehicular access to Scores West - - but not other
business establishments on those streets; ii) preventing Scores West's clientele from
safely accessing and/or departing the club by motor vehicle (taxi, limousine and/or
privately owned automobile); iii) prohibiting Scores West's female employees from
safely accessing the club by motor vehicle and obligating them to park blocks away from

3

the club during nighttime hours; and iv) preventing the owners of Scores West from safely accessing the club by motor vehicle and using on-premises parking facilities - - obligating them instead to park blocks away from the club.

9. Nightclubs in New York County that are otherwise identical to Scores West and/or Scores East, but do not feature female topless dancers, have not been similarly targeted for coerced closure by the City.

10. Nightclubs in New York County that are identically situated to Scores West and/or Scores East, and which present female topless dancing for their clientele, have been identically targeted as Scores West for coerced closure by the City.

11. Because Scores West continued its business operations notwithstanding the City's actions as set forth in paragraph "8" *supra*, on or about January 24, 2007, the City and the SLA entered into an agreement to set Scores West up on pretextual charges of prostitution so that the SLA could commence liquor license revocation proceedings to effectuate the Defendants' agreed-upon objective - - the prohibition of the subject First Amendment expressive activity. In that connection and on that date the City conducted what it claimed to be an undercover police operation at Scores West, made a number of arrests involving minor charges, following which the SLA commenced administrative license revocation proceedings.

12. Prior to the commencement of that proceeding and pursuant to an agreement with the City, the SLA in February 2007 issued an "emergency suspension" of Scores West's liquor license, intended to chill the principals of Scores West and Score's East in the exercise of their First Amendment protected, expressive activities.

4

13. At the commencement of the revocation hearing and pursuant to an agreement with the City, the SLA facilitated and condoned on SLA premises a police riot intended to intimidate the principals of Scores West and Scores East with a view towards chilling their exercise of First Amendment protected conduct both at those establishments and during the administrative hearing process [Goldring v. City of New York, 08 Civ. 3765 (RJS)].

14. In March of 2007 pursuant to an agreement with the City, the SLA acting by and through Boyle, Gedda and Healey revoked Scores West's liquor license, a circumstance intended to terminate in Scores West any future First Amendment expressive entertainment and to chill the principals of Scores East and Scores West in the exercise of their First Amendment right to provide such entertainment.

15. Following the revocation of Scores' West's liquor license, representatives of the SLA and the City publicly announced their intention to promptly suspend and/or revoke Scores East's liquor license, conduct which is imminent and which is motivated by the same objective - - to shut down that business operation because of the First Amendment expressive activities presently on-going at Scores East and because the same expressive activities for years were on-going at Scores West.

16. In that connection, upon issuance of the subject suspension and/or revocation of Scores East's liquor license the City will take immediate action through its Police Department to enforce the SLA's order, force the closure of Scores East, and prohibit any future First Amendment protected expressive behavior at that premises.

5

## AS AND FOR A FIRST CLAIM

17. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "16", inclusive.

17. Under the premises Defendants' conduct is violative of Scores East's First Amendment rights and should be permanently enjoined, 42 U.S.C. §1983.

WHEREFORE a judgment permanently enjoining the Defendants from revoking and/or suspending Scores East's liquor license and/or otherwise chilling it in the exercise of its First Amendment protected rights, should be granted along with costs, reasonable attorney's fees and such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
     May 1, 2008

LOVETT & GOULD, LLP
By:
     Jonathan Lovett (4854)
     Attorneys for Plaintiff
     222 Bloomingdale Road
     White Plains, N.Y. 10605
     914-428-8401

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

333 EAST 60TH STREET, INC., D/B/A          :        08 Civ. 4147 (RJS) (GWG)
Scores East,
                                           :
            Plaintiff,
                                           :        **ANSWER**
-against-
                                           :
NEW YORK STATE LIQUOR AUTHORITY,
DANIEL B. BOYLE, individually,             :
LAWRENCE J. GEDDA, individually,
NOREEN HEALEY, individually, and the       :
CITY OF NEW YORK,
                                           :
            Defendants.
                                           :

-----------------------------------------------------------------X

      Defendants New York State Liquor Authority, Daniel B. Boyle, Lawrence J. Gedda, and

Noreen Healey ("State defendants"), by their attorney, ANDREW M. CUOMO, Attorney

General of the State of New York, as and for their answer to the complaint herein, respectfully

allege:

      1.    That the allegations contained in paragraph 1 of the complaint constitute a

characterization of the case to which no response is required, but to the extent that an answer is

made, deny knowledge or information sufficient to form a belief in respect thereto.

      2.    Deny the allegations set forth in paragraph 2 of the complaint, except admit that

plaintiff purports to proceed as described therein.

      3.    Deny knowledge or information sufficient to form a belief with respect to the

allegations contained in paragraphs 3, 6, 7, 8, 9, 10 and 16 of the complaint.

Ex. B

4.      Deny the allegations set forth in paragraph 4 of the complaint, except admit that the New York State Liquor Authority is an agency of the State of New York, with powers and duties as prescribed by law, and that the individual defendants are commissioners of the New York State Liquor Authority.

5.      Deny knowledge or information sufficient to form a belief with respect to the allegations contained in the first four sentences of paragraph 5 of the complaint, except admit that the City of New York is a political subdivision of the State of New York, and deny the allegations set forth in the fifth sentence of paragraph 5 of the complaint.

6.      Deny the allegations set forth in paragraph 11 of the complaint, except admit that the New York State Liquor Authority commenced certain administrative proceedings in accordance with its powers and duties as prescribed by law.

7.      Deny the allegations set forth in paragraph 12 of the complaint, except admit that the New York State Liquor Authority undertook certain disciplinary proceedings within its powers and duties as prescribed by law.

8.      Deny the allegations contained in paragraphs 13, 15 and 17 of the complaint.

9.      Deny the allegations set forth in paragraph 14 of the complaint, except admit that the New York State Liquor Authority took certain disciplinary action with respect to Scores West all in accordance with its powers and duties as prescribed by law.

10.     In response to paragraph 17 of the complaint, repeat and reallege the responses set forth in the paragraphs hereinbefore as if fully set forth herein.

11.     Deny that plaintiff is entitled to the relief sought in the WHEREFORE CLAUSE of the complaint.

-2-

## AS AND FOR A FIRST DEFENSE

12.    The complaint fails to state a claim upon which relief can be granted as against all State defendants.

## AS AND FOR A SECOND DEFENSE

13.    This Court lacks personal jurisdiction over defendants Daniel B. Boyle, Lawrence J. Gedda and Noreen Healey.

## AS AND FOR A THIRD DEFENSE

14.    The complaint fails to state a claim upon which relief can be granted as against defendants Daniel B. Boyle, Lawrence J. Gedda and Noreen Healey, who are sued solely in their individual capacities, because defendants Daniel B. Boyle, Lawrence J. Gedda and Noreen Healey are powerless in their individual capacities to effect the relief demanded in the complaint.

## AS AND FOR A FOURTH DEFENSE

15.    The New York State Liquor Authority is an agency of the State of New York.

16.    By reason of the foregoing, this action is barred as against the New York State Liquor Authority by the Eleventh Amendment to the United States Constitution, and this Court lacks subject matter jurisdiction over the New York State Liquor Authority.

## AS AND FOR A FIFTH DEFENSE

17.    The actions and conduct of State defendants and all agents and employees of the State of New York under their direction or control in regard to the matters alleged in the complaint, at all relevant times have been fully in compliance with all applicable Federal and State constitutional provisions, statutes and regulations.

-3-

WHEREFORE, State defendants respectfully request that judgment be entered dismissing

the complaint, awarding State defendants the costs of this action, including attorney's fees

pursuant to 42 U.S.C. § 1988, and granting such other and further relief as this Court may deem

just and proper.

Dated:    New York, New York
          June 13, 2008

                                    ANDREW M. CUOMO
                                    Attorney General of the
                                     State of New York
                                    **Attorney for State Defendants**
                                    By:

                                    _____
                                    JOEL GRABER (JG-3337)
                                    Assistant Attorney General
                                    Special Litigation Counsel
                                    Litigation Bureau
                                    120 Broadway - 24th Floor
                                    New York, NY 10271-0332
                                    (212) 416-8645
                                    FAX (212) 416-6009
                                    joel.graber@oag.state.ny.us

TO:

CLERK OF THE COURT

JONATHAN LOVETT, ESQ.
Lovett & Gould LLP
**Attorneys for Plaintiff**
222 Bloomingdale Road
White Plains, NY 10605

PAULA VAN METER
Assistant Corporation Counsel
New York City Law Department
**Attorney for Defendant City of New York**
100 Church St.
New York, NY 10007

-4-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

333 EAST 60th STREET, INC., d/b/a Scores, East,

                                       Plaintiff,    08 Civ. 4147 (RJS)

                -against-

NEW YORK STATE LIQUOR AUTHORITY, DANIEL    **ANSWER**
B. BOYLE, individually, LAWRENCE J. GEDDA,
individually, NOREEN HEALEY, individually, and the
CITY OF NEW YORK,

                                 Defendants.

------------------------------------------------------------------------ x

          Defendant, the CITY OF NEW YORK (the "City"), by its attorney Michael A.

Cardozo, Corporation Counsel of the City of New York, for its Answer to the Complaint seeking

permanent injunctive relief (the "complaint"), respectfully alleges as follows:

          1. Denies the allegations set forth in paragraph "1" of the complaint, except

admits that plaintiff purports to proceed as described therein.

          2. Denies the allegations set forth in paragraph "2" of the complaint, except

admits that plaintiff purports to proceed as described therein.

          3. Denies knowledge or information sufficient to form a belief as to the truth of

the allegations set forth in paragraph "3" of the complaint.

          4. Admits the allegations set forth in the first sentence in paragraph "4" of the

complaint, and denies knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in the second sentence of that paragraph.

Ex. C

5. Denies the allegations set forth in paragraph "5" of the complaint, except admits that the City is a municipal corporation created and existing under and by virtue of the laws of the State of New York.

6. Denies the allegations set forth in paragraph "6" of the complaint.

7. Denies the allegations set forth in paragraph "7" of the complaint.

8. Denies the allegations set forth in paragraph "8" of the complaint.

9. Denies the allegations set forth in paragraph "9" of the complaint.

10. Denies the allegations set forth in paragraph "10" of the complaint.

11. Denies the allegations set forth in paragraph "11" of the complaint except admits that after receiving a complaint that acts of prostitution were being committed at plaintiff's premises City police conducted an investigation and made numerous arrests for prostitution and related crimes on January 24, 2007 at Scores West.

12. Denies the allegations set forth in paragraph "12" of the complaint except admits that in or about February 2007 the State Liquor Authority suspended the liquor license of Scores West.

13. Denies the allegations set forth in paragraph "13" of the complaint.

14. Denies the allegations set forth in paragraph "14" of the complaint to the extent that they relate to the City.

15. Denies the allegations set forth in paragraph "15" of the complaint.

16. Denies the allegations set forth in paragraph "16" of the complaint.

17. In response to the first paragraph "17" of the complaint, repeats and realleges the responses set forth in the paragraphs hereinbefore as if fully set forth herein.

18. Denies the allegations set forth in the second paragraph "17" of the complaint.

-2-

19. Denies that plaintiff is entitled to the relief sought in the WHEREFORE paragraph of the complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE:

20. The complaint fails to state a claim upon which relief can be granted as against the City.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE:

21. The City has not violated any rights, privileges or immunities under the Constitution or laws of the United States or the State of New York or any political subdivision thereof, nor has the City violated any act of Congress providing for the protection of civil rights.

22. Any actions of the City complained of herein were in all respects lawful, proper and constitutional.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE:

23. The plaintiff lacks standing to assert the claims set forth in the complaint.

Dated:        New York, New York
              May 27, 2007

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the City of New York
                        Attorney for the City defendants
                        100 Church Street
                        New York, New York 10007
                        (212) 442-4050

                        By:    PAULA VAN METER

-3-

Index No. 08 Civ. 4147 (RJS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

333 east 60th STREET, INC. d/b/a Scores, East,

Plaintiff,

-against-

NEW YORK STATE LIQUOR AUTHORITY,
DANIEL B. BOYLE, individually, LAWRENCE J.
GEDDA, individually, NOREEN HEALEY,
individually, and the CITY OF NEW YORK

Defendant(s).

## ANSWER

### *MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for City of New York*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Paula Van Meter*
*(212) 442-4050*
*L. M. No. 2008-018266AL*

*Due and timely service is hereby admitted.*

*New York, N.Y. ........................................................, 200......*

*...................................................................................... Esq.*

*Attorney for ................................................................................*

# LICENSE SUSPENDED

## NEW YORK STATE LIQUOR AUTHORITY

| | | |
|---|---|---|
| **IN THE MATTER OF PROCEEDINGS TO SUSPEND, CANCEL OR REVOKE** | | |
| License Number: | 1144563, New York OP | **EMERGENCY SUMMARY ORDER OF SUSPENSION** |
| Issued to: | Go West Entertainment Inc. DBA: Scores West | Serial No.: |
| Licensed Premises: | 533 535 W 27th Street New York, NY 10001 | 1144563, New York OP |

Proceedings having been duly considered by the State Liquor Authority at a meeting duly held on February 21, 2007, and:

The Members of the New York State Liquor Authority, pursuant to subdivision 3 of section 401 of the State Administrative Procedure Act, and in conjunction with the Alcoholic Beverage Control Law of the State of New York and the Rules of the New York State Liquor Authority, hereby find that the public health, safety and welfare imperatively require emergency action, and therefore, enter an **EMERGENCY SUMMARY ORDER OF SUSPENSION** of alcoholic beverage license serial number 1144563, New York OP, issued to Go West Entertainment Inc., doing business as Scores West, located at 533 535 W 27th Street, New York, NY 10001.

This **EMERGENCY SUMMARY ORDER OF SUSPENSION** is based upon the following facts, findings and conclusions:

### FACTS

1. Go West Entertainment Inc., DBA: Scores West, is the holder of an alcoholic beverage license, serial number 1144563, New York OP, originally issued March 12, 2004, scheduled to expire on February 29, 2008.

2. The State Liquor Authority, by Notice of Pleading dated February 15, 2007, a copy of which is attached to this Order, commenced disciplinary proceedings to revoke the license of Go West Entertainment Inc., DBA: Scores West, on the following charges:

    1. That on 1/24/2007 through 1/25/2007, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting females on the licensed premises to solicit male patrons therein for immoral purposes in violation of subdivision 6 section 106 of the Alcoholic Beverage Control Law.

    2. That on and before 1/25/2007, the licensee, through the actions of its principals Richard K. Goldring and Elliot Osher, and its agents and employees, has violated rule 54.2 of the Rules of the State Liquor Authority [9 NYCRR 48.2] in that the licensee has failed to exercise adequate supervision over the conduct of the licensed business; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(f) of the Rules of the State Liquor Authority [9 NYCRR 53.1(f)].

3. The charges contained in the Notice of Pleading dated February 15, 2007 are based upon a report submitted by a beverage control investigator employed by the State Liquor Authority detailing action taken by detectives assigned to the Manhattan South Vice Enforcement Squad of the New York City Police Department in arresting employees of the licensed premises on January 25, 2007 after other undercover detectives were offered sex for money by female entertainers inside the licensed premises. Persons who were acting as managers of the licensed premises suffered or permitted such offerings of prostitution to take place inside the licensed premises.

4. The activities reflected in the report of the January 25, 2007 arrests demonstrate that the premises do not operate in a safe, law-abiding fashion and are, in fact, being operated in a manner that is an immediate and imminent hazard to the public health, welfare, and safety. Further such conduct on the licensed premises demonstrates that the licensee , its principals Richard K. Goldring and Elliot Osher, who have also informed the State Liquor Authority that they manage the premises, and its employees and its agents have a blatant disregard for compliance with the

1

Alcoholic Beverage Control Law, and the Rules of the Authority, and have fostered the premises becoming an unsafe, unhealthful, environment for its patrons, community residents, law enforcement personnel, and the public at large.

## FINDINGS AND CONCLUSIONS

1. The incidents and activities reflected in the foregoing records indicate a serious risk to the health, safety and welfare of the patrons of Go West Entertainment Inc., DBA: Scores West, and to the public.

2. It is concluded that in order to protect the public health, safety and welfare, it is imperative that emergency action be taken against the immediate and continuing danger resulting from the licensee's failure to adequately supervise the conduct of the licensed premises. It is apparent that the licensee has failed to employ personnel and procedures necessary and reasonable to preserve order on the licensed premises, and to operate the licensed premises in conformity with the Alcoholic Beverage Control Law and Rules of the State Liquor Authority.

3. That such emergency action requires the State Liquor Authority to issue an **EMERGENCY SUMMARY ORDER OF SUSPENSION** of the alcoholic beverage license of Go West Entertainment Inc., DBA: Scores West, pursuant to subdivision 3 of section 401 of the State Administrative Procedure Act.

4. The record before the Members of the Authority demonstrates a continuing risk to the health, safety, and welfare of the People of the State of New York.

5. This **EMERGENCY SUMMARY ORDER OF SUSPENSION** is the most practical and viable means of protecting the public health, safety, and welfare available to the State Liquor Authority.

6. The Members of the State Liquor Authority have weighed the public versus the private interest in the suspension of the license, and find that the licensee's interest in the continued enjoyment of the license privilege is far outweighed by the immediate danger existing to the public health, safety, and welfare presented by the misconduct in or about the licensed premises and the licensee's failure to properly supervise the licensed premises.

## BASED UPON THE FOREGOING FACTS, FINDINGS AND CONCLUSIONS, IT IS HEREBY ORDERED:

1. That the alcoholic beverage license issued to Go West Entertainment Inc., DBA: Scores West, serial number 1144563, New York OP, is hereby SUSPENDED until such time as this ORDER is lifted, or until a final ORDER becomes effective in connection with the revocation proceedings instituted by the Notice of Pleading dated February 15, 2007, copies of which are served simultaneously herewith.

2. That the licensee, its agents, servants and employees are prohibited from trafficking in alcoholic beverages until the ORDER is lifted, or until a final ORDER becomes effective in connection with the revocation proceedings instituted by the Notice of Pleading dated February 15, 2007.

3. The licensee has until March 21, 2007, as stated in the Notice of Pleading dated February 15, 2007, to plead to the charges. Failure of the licensee to plead on or before the pleading date shall be deemed a plea of "No Contest".

4. In the event that the licensee should plead "Not Guilty" by the assigned pleading date of March 21, 2007, then the licensee will be afforded a prompt and speedy administrative hearing, to be scheduled as soon as possible after the plea is entered, on all the charges contained in the February 15, 2007 Notice of Pleading.

**IT IS FURTHER ORDERED** that said licensee surrender said license forthwith to the State Liquor Authority or its duly authorized representative, upon commencement of this said period of suspension, and

**IT IS FURTHER ORDERED** that failure by the licensee to comply with the terms of this order shall result in the cancellation or revocation of the said license in accordance with the provisions of the Alcoholic Beverage Control Law.

Dated: February 21, 2007

Certified by

Secretary's Office

STATE LIQUOR AUTHORITY

DANIEL B. BOYLE
Chairman

2

THIS ORDER OF SUSPENSION MUST BE PUBLICLY DISPLAYED IN THE FOLLOWING MANNER:

If there be a door opening from the street into the licensed premises and a window facing the street upon which such door opens, such order shall be displayed in such window so that it may be readily seen from the street. If the licensed premises are otherwise located, such order shall be affixed to the door of the entrance to the premises.

THIS SUSPENSION ORDER MUST NOT BE REMOVED FROM THE WINDOW DURING THE ABOVE PERIOD OF THIS SUSPENSION.

Please take notice that any person who shall sell any alcoholic beverage during the suspension period shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $200 or by imprisonment in a county jail or penitentiary for a term of not more that six months of both. (Section 130 of the Alcoholic Beverage Control Law).

3

**NEW YORK STATE LIQUOR AUTHORITY**
**Hearing Bureau**
**317 Lenox Avenue, 4th Fl.**
**New York, New York 10027**

-------------------------------------------------------------------------------X

IN THE MATTER OF PROCEEDINGS TO CANCEL OR REVOKE

Serial Number: 1144563 NEW YORK OP 1144563

Docket #    419-2007
Case #      38293

Issued To:    **GO WEST ENTERTAINMENT INC**
              **SCORES WEST**

Licensed Premises: 533-535 W. 27TH STREET
                   NEW YORK, N.Y. 10001

-------------------------------------------------------------------------------X

BEFORE:         **Robert L. Karr, Administrative Law Judge**

A hearing was held on 3/28/07, 07/13/07, 07/17/07, 08/06/07, 08/29/07, 09/25/07, 10/16/07 and 11/14/07 concerning the following charges:

1. That on 01/24/07, through 01/25/07, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting females on the licensed premises to solicit male patrons therein for immoral purposes in violation of subdivision 6 of Section 106 of the Alcoholic Beverage Control Law.

2. That on and before 10/22/07 the licensee, through the actions of its principals Richard K. Goldring and Elliot Osher, and its agents and employees, has violated rule 54.2 of the Rules of the State Liquor Authority [9 NYCRR 48.2] in that the licensee has failed to exercise adequate supervision over the conduct of the licensed business; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(f) of the Rules of the State Liquor Authority [9 NYCRR 53.1(f)].

The Authority was represented by Robert F. Buckley, Esq.

Martin Mehler, Esq. 305 Broadway, New York, N.Y. 10007 represented the Licensee.

U/C Police Agent 9035, 1581, Lt. Michael Costello, Det. John D'Onfrio, Sgt. Roger Ogara, Det. Timothy Black, Lt. Christopher Murphy, all testified for the Authority.

Gustavo Kiste, Spiro Anastasiads and Police Chief Steven Braille testified for the Licensee.

Authority's Exhibits 1 - 8 and Licensee's Exhibits A were submitted in evidence.

Ex. E

The Hearing was transcribed.

Based on the testimony and record in this case, the Administrative Law Judge makes the following:

## FACTS & FINDINGS:

Undercover Police Officer 9035 testified he went to the premises on 01/24/07 at 11:00 pm. together with two other undercover police officers.   A Hispanic female, Ms. Vasquez, came over to him and asked him if he would like a lap dance. She was a dancer at the club. He said "yes" and for $20.00 he received the lap dance. He gave her another $20.00 for a second dance. Ms. Vasquez asked him if he wanted a "private dance" in another room. She said it would cost $500 for the room and $300.00 for her to come to the room. Another man, Gustavo Kiste, came over at the request of Karina. Mr. Kiste said he could get the room for $300.  The undercover officer replied he needed to ask another friend for help with the money.  He then asked Ms. Vasquez what he would get for the money. He then asked for a "blow job" and how much that would be.  Ms. Vasquez said that would be $200.00 more. He replied that he needed more time and needed to consult with his friend.  He then left the premises with the other undercover officers.  The premises were not crowded, with about 50 – 60 patrons. The conversation with Ms. Vasquez was private.  No one else heard it. The noise level from the music was loud.

Lt. Michael Costello testified he went to the premises on 01/24/07 at 11:30 p.m.  Several dancers asked if he would like a "table dance". One female dancer then asked him if he would like a private room with her for $200.  She told him that he could negotiate the price for the room.  A male came over to him shortly and said it would cost $600 for a room and $300 to have the dancer he had spoken to before come to the room.

One dancer he spoke to said there would be no sex. However, later on, another dancer came over and asked if he would like to have sex or a "blow job" for a certain price. The room was dimly lit and the music loud. The conversation about sex was private, and no one overheard the conversation.  He went over to a man working in the premises and asked how much for a private room with a girl.  He replied $600.  The man was dressed in a suite and tie.   There were a few men dressed in a similar manner. These men would ask if he had a good time or needed anything.

Police Det. John D'Onfrio testified he went to the premises on 01/24/07 at 11:00 pm. Several people identified themselves as managers. They were wearing black suits and white shirts.  Two men were identified as "managers" but all they did was arrange a price for private rooms. He did not testify they acted as "managers" in any other way.

After the arrest of several females and males he observed two locked rooms. Staff for the premises stated to the police that the two private rooms were locked and no one had a key. Staff said that one room was a bathroom.

2

As the police were leaving he knocked on the door and saw a completely naked female with a male caught in the act of pulling up his pants. He knocked on the second room and a female, who was topless, opened the door. There was also a male who was pulling up his pants. The two couples remained in the locked room for about 1 1/2 hours while the police were present. Four females were arrested and three took a plea bargain to a disorderly premise. The fourth female pled guilty to prostitution. Charges against a fifth female were dropped.

Sgt. Roger Ogara testified he went to the premises as an undercover agent. He sat by the bar when he entered. He had a conversation with one dancer who asked if he wanted a lap dance. She performed on stage and then returned later and asked if he would like to go to a rear room. The rear room was through a glass door in the rear area near the restaurant area. There were males dressed in black ties, white shirts and black suits. A lap dance cost $40.00. This dancer said a manager would give him a "price" for a back room. She stated the rooms in the rear were private. She brought over a male manager who said it was $1,500 for a rear room. The manager said he could reduce the price. Officer Ogara declined the offer because it was too expensive. The manager, wearing a black suit, offered to show him the rear room but he declined. This dancer said "anything could happen in the rear room". He asked what could get he could get for $700. She replied he could get anything he wanted. He said he wanted "to fuck." She asked if he was "packing". He replied that he didn't understand what that meant. She explained she was asking if he had a condom. The manager came back and said he could have the room for one half hour for $700.00. The manager asked for cash for the room. The dancer said the people at the club knew what went on in the rear VIP rooms and would leave us alone. Officer Ogara understood the agreement to mean that if he paid $700.00 for the room, he could have sex with her in the room, for one half hour. The woman he spoke to was identified as Nichole Green. She was arrested later that morning. She pled guilty in criminal court to prostitution. There were eight undercover police officers inside on 01/24/07 – 01/25/07. He also understood that several other undercover officers stated that they had conversations with dancers regarding an exchange of sex for money.

Lt. Christopher Murphy testified he was supervising the officers and operation at the premises together with Lt. Costello. He was there as an integrity official to watch the money that the officer spent. There were no problems with the operation.

Undercover Officer #1581 testified he went to the premises on 01/24/07. Female dancers approached him and engaged him in conversation. One dancer offered to perform a lap dance with him. He paid $20.00 for a lap dance for one song. He asked for a blow job and she said she could arrange it for $500.00. He would also have to speak to a "manager" who would show him a room in the rear. The woman was later identified as Collin Mathews, and the manager as Eli Iskolsky. The manager had an electronic swipe key for the rear area. The Officer was shown a room. The manager told him it would be $600 for the room. The rear room had a couch and chair. Another dancer also approached him and offered him a lap dance which he agreed to pay for. He then asked her for a blow job". She refused but said there were other women at the

3

club who would do it for him. She offered to arrange for the "blow job" for $500. The blow job would take place in the rear room, which he would have to pay for. The manager assured him that he could get a "blow job" in the rear room and have privacy. No one from the club would come in and stop him. At the end of the operation he observed a completely nude woman walk out of one of the rear rooms and enter another room.

He was previously at the premises on December 29, 2006 and had a conversation with a dancer for a "blow job" for $500. He was also told he would have to rent a room from the manager. The police left the club on December 29, 2006 without taking any police action but decided to return with a larger crew of police officers on 01/24/07 and further investigate the situation.

Det. Timothy Black testified that he arrested seven people on 01/24/07. He arrested Ms. Vasquez for prostitution, and charged her with agreeing to have sex for $600 and fellatio for $200. He arrested Ms. Coleen Matthews and charged her with prostitution and also charged her with agreeing to perform fellatio for $500. He arrested Ms. Marianna Nasyrova for agreeing to sexual intercourse for $500 and fellatio for $300. He arrested Ms. Nicole Green for agreeing to sexual intercourse for $700. He arrested Ms. Zamari Cardenas for promotion of prostitution. She allegedly agreed to perform fellatio for $500 and have Matthews perform fellatio for $500. Mr. Eli Iskolsky was arrested and charged with permitting prostitution. Mr. Gustavo Kiste was arrested and charged with permitting prostitution. Ms. Green was arrested previously for prostitution in Queens on 10/27/05 and received a conditional discharge concerning that matter. This time, however, Ms. Green pled guilty to prostitution in Criminal Court. The District Attorney declined to prosecute Ms. Cardenas.

Mr. Gustavo Kiste testified he works as a waiter at the subject premises. He brings food to all areas of the premises and the VIP rooms. He never had a conversation with any guest about renting rooms for sex. There are hosts and managers that work at the premises. The hosts usually deal with the private VIP rooms. These VIP rooms can accommodate several people and have a table, couch, a TV and a device to control the volume and type of music that is played in the VIP rooms. The VIP rooms are opened with a swipe card.

Mr. Spiro Anastasiads testified he has been the general manager for the past three years. He is in charge of hiring and firing female dancers at the club. It is the job of the floor host to meet and greet the patrons. There are private VIP rooms but several employees walk into the rooms on several different occasions when the rooms are rented. Management makes sure nothing illegal takes place inside the rooms. Sexual activity between any patron and dancers is not allowed at all. The VIP rooms are rented for about $1,000 and $500 for a dancer. The police entered on 01/24/07 – 01/25/07. The waiters, host and manager all have a swipe key to the VIP rooms. Lap dancers cost $20 for about one or two songs. He asks about the criminal history of any employee but does not independently check their criminal history.

4

Police Capt. Steven Braille testified, as a defense witness, that in general, police officers should not be visiting strip bars in the area they patrol. He testified about his background and the general policies of the police in conducting an undercover operation. He was not involved in any specifics of this operation at the premises.

.OPINION:

The New York Police Department received an anonymous tip that there was prostitution at the subject premises. The police then sent an undercover team inside the premises on December 29, 2006 to see if there was cause for further investigation. One police officer was successful in engaging a dancer working in the subject club in a conversation for sex for money. The police did not arrest anyone at that time. The police decided to return to the premises on 01/24/07 – 01/25/07 to run a "sting operation" with a full team of police officers working undercover with an arrest team waiting outside the premises.

The Police arrived on 1/24/07 and began a large undercover operation to determine if prostitution was occurring at the premises. The undercover police officers entered and engaged employee dancers in sexual related conversations, during which prices were discussed for various sex acts, involving sexual intercourse and fellatio which would be performed by the dancers with the undercover officers. In addition to the prices for the sex acts themselves, the officers were told there would be an additional price for renting a private room. The dancers told the officers that the price could be negotiated with any of the "floor managers/employees". There were several floor managers. Floor managers dressed in black suits, black ties and white shirts. One of the floor managers offered to show the private room to Sergeant Ogara but he declined to look at the room. Ogara was assured that the area was locked, private and that there were no cameras present.

Undercover officer 9035 gave credible testimony that he could receive a "private dance" with one of the dancers, Ms. Vasquez. Ms. Vasquez stated it would cost $500 for the room and $300 for her to come to the room. Ms. Vasquez also said it would cost an additional $200 for her to perform fellatio on him. The price for the room was confirmed by Mr. Gustavo Kiste.

Police Lt. Costello gave credible testimony that a dancer asked him if he would like to go to a private room with her for $200. She said if he would like to do so, he would have to talk to a floor manager about the price. A floor manager dressed in a black suit and white shirt came over to him and informed him he could have the dancer for $300 and $600 for the room. He spoke to several dancers that night. One dancer said there would be no sex included in the private room but another dancer told him she would be willing to have sex or give him a "blow job" for U. S. currency.

Police Detective D'Onfrio gave credible testimony that he was part of the arrest team at the premises on 01/24/07 – 01/25/07. The police arrested five females and two males, after an undercover "sting operation" which took several hours to complete. After the arrests, the club announced the music would be played and business would resume as

usual. The club offered free drinks to the patrons remaining. The police started to leave. As Detective D'Onfrio was leaving, he noticed two locked doors. Other police officers told him that they tried to open the doors but were unable to do so. The employees of the club stated no one had a key. The police did not have a search warrant and did not pursue the matter further as they successfully arrested the seven people they wanted to arrest. However, Detective D'Onfrio knocked on the second door and to his complete surprise a completely naked female opened the door. He looked inside and saw a male who was pulling up his pants. He then decided to also knock on the other room and a female, who was topless, opened the door. He looked inside and observed a male who was in the process of pulling up his pants. He believed that the two couples remained in the locked room for about 1 1/2 hours while the police were present and conducted their investigation. I believe the employees lied to the police when they said they did not have a swipe key to these rooms. I believe the employees refused to open the locked rooms because they were afraid of what the police would find inside. Five female employees and two male employees were arrested. However, Detective D'Onfrio decided not to arrest anyone in these rooms.

I also credit Sgt. Ogara's testimony that one dancer offered him sex for money. In addition, I credit his testimony that a floor manager offered to rent him a rear room in the premises. The price for this room was negotiated down from $1,500 to $700. The dancer told Sgt. Ogara he could receive "anything he wanted". I find that the parties clearly understood the offer was sex for money based upon the amount of money offered and the conversation Sgt. Ogara had, making it clear that he expected sex. The dancer asked if he had a condom, also making it clear that she understood that they would have sex together.

The following employees were arrested at the premises:

Ms. Vasquez, a 32 year old female, was arrested and charged with one count of Prostitution, which is a B misdemeanor, "after an offer and agreement to perform fellatio in exchange for $200 USC." She pled guilty to a disorderly premises charge.

Ms. Nicole Green, a 23 year old female, was arrested and charged with one count of Prostitution, which is a B misdemeanor, after she "agreed to perform a sexual intercourse for $700 USC." Ms. Green pled guilty to prostitution.

Ms. Colleen Matthews, a 22 year old female, was arrested and charged with one count of Prostitution, which is a B misdemeanor, after she "agreed to perform a sex act (oral sex) for $500 USC." She pled guilty to a disorderly premises charge.

Ms. Marianna Nasyarova, a 19 year old female, was arrested and charged with one count of Prostitution, which is a B misdemeanor, after she "agreed to perform a sex act (oral sex) for $300 USC." She pled guilty to a disorderly premises charge.

Mr. Eli Iskolsky, a 36 year old male, was arrested and charged with one count of permitting prostitution, which is a B misdemeanor, because he, "was in control of the premise where prostitution was taking place. He pled guilty to a disorderly premises charge.

Mr. Gustavo Kiste, a 29 year old male, was arrested and charged with one count of Permitting Prostitution, which is a B misdemeanor, because he, "was in control of premises where prostitution was taking place." He pled guilty to a disorderly premises charge.

Ms. Zamari Cardenas was arrested and charged with promotion of prostitution. Charges were dismissed against Ms. Cardenas upon prosecutor's declination to prosecute the case.

Based upon all of the above I find substantial and believable evidence that the licensee permitted and suffered the premises to become disorderly by permitting employees to engage in acts of prostitution and permitting prostitution in violation of Section 106(6) of the Alcoholic Beverage Control Law and also the Licensee's failure to properly supervise the premises.

The record reveals there were several female and male employees that were engaged in various acts of prostitution or the permitting of prostitution. The premises have VIP rooms that are locked with a swipe key where patrons can enter. One police officer observed a fully naked female and a topless female in each of these rooms. A male was also in each of these rooms with the female and was observed pulling up his pants. It strains creditability to believe that no illicit activity occurred in these rooms. I do not believe this behavior at the premises was isolated, insignificant or sporadic, that it was unknown to management, based upon the number of employees involved, the fact that there were locked rooms for couples to use, and the amount of money paid for these rooms. The police received a tip that there was prostitution going on at the premises and verified it both on 12/29/06 and between 01/24/07 – 01/25/07.

One employee/dancer, Ms. Green, was previously arrested for prostitution. Ms. Green admitted in Criminal Court that she was indeed guilty of prostitution on 01/24/07 – 01/25/07. I find the club did not perform a thorough background check on her.

I find that the sexual activity in the license premises was open and notorious such that the licensee knew or should have known of its occurrence. Either the licensee condoned the activity or was ineffective in preventing the activity. I conclude that the licensee failed to exercise the proper degree of meaningful supervision.

A licensee and/or its agent, exercising proper supervision, would have and should have known of the unlawful activities involved in this case. The licensee should have made a diligent inquiry into the activities being conducted in the rear locked rooms. The licensee cannot avoid the consequences of violating the law merely by choosing to close its eyes.

7

## CONCLUSION:

All charges are sustained.

Robert L. Karr
Administrative Law Judge

RLK/lp
Dated:    02/04/08

8

NEW YORK STATE LIQUOR AUTHORITY
FULL BOARD DISPOSITION
MEETING OF 03/05/2008

03/06/2008

GO WEST ENTERTAINMENT INC
SCORES WEST
533 535 W 27TH STREET
NEW YORK NY 10001

Re:    1144563, NEW YORK OP 1144563
DO # 419-2007/Case # 38293
AGENDA ITEM NO. 2008-00743F

Dear Licensee:

The Members of the Authority at their regular meeting on 03/05/2008 determined as follows with regard to the above captioned matter:

CHARGES SUSTAINED

Penalty is the following:

Civil Penalty: $20000.00
Bond Claim: $1000.00
Revocation

Penalty Due by: 04/04/2008

NOTE: A civil penalty must be paid in full, no installments, by CERTIFIED CHECK, OFFICIAL BANK CHECK OR MONEY ORDER payable to the *State Liquor Authority*. Mail payments to the New York State Liquor Authority, Revenue Collections Unit (CP), 80 South Swan Street, Suite 900, Albany, New York 12210-8002, by the above due date. To insure proper credit, please list your license serial number and name on the check.

If the Authority has to impose a Bond Claim, a demand for the bond claim will be made to your bonding company, who will then seek repayment from you and additional expenses may be incurred in connection with the restoration of the bond. You will be required to restore your bond, pursuant to Rule 9.7(b) of the Rules of the State Liquor Authority [9 NYCRR 81.7(b)], which has been forfeited by reason of this penalty, within 10 days. A restoration of the bond will be required to continue in business and avoid futher disciplinary proceedings.

JACQUELINE HELD
NEW YORK STATE LIQUOR AUTHORITY
SECRETARY'S OFFICE
80 South Swan Street, Suite 900
Albany, NY 12210
[518] 402-4394
secretarys_office@abc.state.ny.us

cc:    file
MARTIN P. MEHLER
MEHLER & BUSCEMI
305 BROADWAY SUITE 1102
NEW YORK NY 10007

Ex. F

# NEW YORK STATE LIQUOR AUTHORITY

## REVOCATION ORDER
## EFFECTIVE IMMEDIATELY

1144563, NEW YORK OP 1144563

GO WEST ENTERTAINMENT INC
SCORES WEST
533 535 W 27TH STREET
NEW YORK, NY 10001

WITH $1,000 BOND CLAIM
PLUS $20,000 CIVIL PENALTY

419-2007/Case No. 38293

Proceedings having been duly instituted pursuant to the provisions of the Alcoholic Beverage Control Law, (Chapter 478 of the Laws of 1934, as amended) to cancel or revoke the above license issued to the licensee for premises located at the address stated above and the licensee having duly pled "no contest" to the charges contained in the Notice of Pleading or a hearing having been duly held by the State Liquor Authority in connection with said proceedings, and

The matter having been duly considered by the State Liquor Authority at a meeting held on 03/05/2008, and the Authority having found:

1. That on 1/24/2007 through 1/25/2007, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting females on the licensed premises to solicit male patrons therein for immoral purposes in violation of subdivision 6 section 106 of the Alcoholic Beverage Control Law.

2. That on and before 1/25/2007, the licensee, through the actions of its principals Richard K. Goldring and Elliot Osher, and its agents and employees, has violated rule 54.2 of the Rules of the State Liquor Authority [9 NYCRR 48.2] in that the licensee has failed to exercise adequate supervision over the conduct of the licensed business; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(f) of the Rules of the State Liquor Authority [9 NYCRR 53.1(f)].

IT IS HEREBY ORDERED that the license aforesaid issued to said licensee for the above described premises be, and the same hereby is REVOKED, effective   IMMEDIATELY   ; and

IT IS FURTHER ORDERED that said licensee surrender said license forthwith to the State Liquor Authority or its duly authorized representative, on the above effective date.

Dated:   03/06/2008

Certified by

JACQUELINE HELD
Secretary to the Authority

STATE LIQUOR AUTHORITY

DANIEL B. BOYLE
CHAIRMAN

To:    533 535 W 27TH STREET, NEW YORK, NY 10001

Licensee's name and residence address
GOLDRING,RICHARD K, 5 FOX CHASE DR, WATCHUNG, NJ 070609
Licensee's Landlord
KAZVIN REALTY CORP, 359 GRASSY SPRAIN RD, YONKERS, NY 10710

Please take notice that under the provisions of the Alcoholic Beverage Control Law, no license may be issued to said licensee for a period of two years from the date of such revocation.

Please take notice that any person who shall sell any alcoholic beverages, without a license by the Liquor Authority or after his license has been revoked, cancelled or surrendered, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than two hundred dollars nor more than twelve hundred dollars or by imprisonment in a county jail or penitentiary for a term of not less than thirty days nor more than one year or both.

| |
|---|
| **Go W. Entertainment Inc. v New York State Liq. Auth.** |
| Motion No: M-1530 |
| Slip Opinion No: 2008 NYSlipOp 69134(U) |
| Decided on April 15, 2008 |
| Appellate Division, First Department, Motion Decision |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This motion is uncorrected and is not subject to publication in the Official Reports. |

April 15, 2008

Go West Entertainment Inc. v New York State Liquor Authority

Stay denied; interim relief granted by order of a Justice of this Court, dated April 1, 2008, vacated.

Before: Andrias, J.P., Friedman, Buckley, Catterson, Acosta, JJ.

Motion No. M-1530

Ex. G

NEW YORK STATE LIQUOR AUTHORITY
FULL BOARD DISPOSITION
MEETING OF 03/05/2008

04/17/2008

GO WEST ENTERTAINMENT INC
SCORES WEST
533 535 W 27TH STREET
NEW YORK NY 10001

Re:    1144563, NEW YORK OP 1144563
       DO # 419-2007/Case # 38293
       AGENDA ITEM NO. 2008-00743F

Dear Licensee:

In accordance with the Decision and Order of the Appellate Division of the Supreme Court, First Judicial Department, County of New York, The Authority is re-imposing the following penalty:

Martin Mehler, Esq. appeared

CHARGES SUSTAINED

Penalty is the following:

    Civil Penalty: $20000.00
    Bond Claim: $1000.00
    Revocation

Penalty Due by: 04/04/2008

NOTE: A civil penalty must be paid in full, no installments, by CERTIFIED CHECK, OFFICIAL BANK CHECK OR MONEY ORDER payable to the *State Liquor Authority*. Mail payments to the New York State Liquor Authority, Revenue Collections Unit (CP), 80 South Swan Street, Suite 900, Albany, New York 12210-8002, by the above due date. To insure proper credit, please list your license serial number and name on the check.

A demand for the bond claim will be made to your bonding company, who will then seek repayment from you and additional expenses may be incurred in connection with the restoration of the bond.

JACQUELINE HELD
NEW YORK STATE LIQUOR AUTHORITY
SECRETARY'S OFFICE
80 South Swan Street, Suite 900
Albany, NY 12210
[518] 402-4394
secretarys_office@abc.state.ny.us

cc:    file
MARTIN P. MEHLER
MEHLER & BUSCEMI
305 BROADWAY SUITE 1102
NEW YORK NY 10007

Ex. H

# NEW YORK STATE LIQUOR AUTHORITY

## REVOCATION ORDER
## EFFECTIVE IMMEDIATELY

1144563, NEW YORK OP 1144563

**WITH $1,000 BOND CLAIM**
**PLUS $20,000 CIVIL PENALTY**

GO WEST ENTERTAINMENT INC
SCORES WEST
533 535 W 27TH STREET
NEW YORK, NY 10001

419-2007/Case No. 38293

Proceedings having been duly instituted pursuant to the provisions of the Alcoholic Beverage Control Law, (Chapter 478 of the Laws of 1934, as amended) to cancel or revoke the above license issued to the licensee for premises located at the address stated above and the licensee having duly pled "no contest" to the charges contained in the Notice of Pleading or a hearing having been duly held by the State Liquor Authority in connection with said proceedings, and

The matter having been duly considered by the State Liquor Authority at a meeting held on 03/05/2008, and the Authority having found:

1. That on 1/24/2007 through 1/25/2007, the licensee suffered or permitted the licensed premises to become disorderly by suffering or permitting females on the licensed premises to solicit male patrons therein for immoral purposes in violation of subdivision 6 section 106 of the Alcoholic Beverage Control Law.

2. That on and before 1/25/2007, the licensee, through the actions of its principals Richard K. Goldring and Elliot Osher, and its agents and employees, has violated rule 54.2 of the Rules of the State Liquor Authority [9 NYCRR 48.2] in that the licensee has failed to exercise adequate supervision over the conduct of the licensed business; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1(f) of the Rules of the State Liquor Authority [9 NYCRR 53.1(f)].

IT IS HEREBY ORDERED that the license aforesaid issued to said licensee for the above described premises be, and the same hereby is **REVOKED**, effective ___IMMEDIATELY___ ; and

IT IS FURTHER ORDERED that said licensee surrender said license forthwith to the State Liquor Authority or its duly authorized representative. on the above effective date.

Dated:   04/17/2008

Certified by

STATE LIQUOR AUTHORITY

**JACQUELINE HELD**
Secretary to the Authority

DANIEL B. BOYLE
CHAIRMAN

To:    533 535 W 27TH STREET, NEW YORK, NY 10001

Licensee's name and residence address
GOLDRING,RICHARD K, 5 FOX CHASE DR. WATCHUNG, NJ 070609
Licensee's Landlord
KAZVIN REALTY CORP, 359 GRASSY SPRAIN RD, YONKERS, NY 10710

Please take notice that under the provisions of the Alcoholic Beverage Control Law, no license may be issued to said licensee for a period of two years from the date of such revocation.

Please take notice that any person who shall sell any alcoholic beverages, without a license by the Liquor Authority or after his license has been revoked, cancelled or surrendered. shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than two hundred dollars nor more than twelve hundred dollars or by imprisonment in a county jail or penitentiary for a term of not less than thirty days nor more than one year or both.

NEW YORK STATE LIQUOR AUTHORITY

NOTICE OF DEMAND
(for license Cancelled or Revoked)

IN THE MATTER OF PROCEEDINGS TO REVOKE

License Number        1144563, NEW YORK OP 1144563

DO#        419-2007/Case # 38293

Issued to        GO WEST ENTERTAINMENT INC
                 SCORES WEST

TWO ADDITIONAL BARS ON PREMISES

TO:    GOLDRING,RICHARD K
Residing at:    5 FOX CHASE DR, WATCHUNG, NJ 070609

Demand is hereby made upon you by the State Liquor Authority for the Surrender, forthwith, of license number

1144563, NEW YORK OP I144563  issued to you for premises located at

533 535 W 27TH STREET, NEW YORK, NY 10001  which license was

REVOKED by the State Liquor Authority effective ____IMMEDIATELY_____.

A liquidator's permit shall be issued to the licensee upon application therefor to sell its entire stock of alcoholic beverages

to other licensees.

By order of
STATE LIQUOR AUTHORITY

Dated  04/17/2008

Certified by

JACQUELINE HELD
Secretary to the Authority

DANIEL B. BOYLE
CHAIRMAN

Aforesaid License received by: _____

of the _____ from _____
                                                (name of person who surrendered license)

on _____ , at _____ A.M./P.M. at _____
    (Month, Day, Year)                                              (Place)

_____
(Signature)

05/01/2008  16:01  12128894412          APPELLATE DIVISION F                PAGE  01/01
                                                                                    1/1

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on April 29, 2008.

Present:  Hon. Richard T. Andrias,          Justice Presiding,
              David Friedman
              John T. Buckley
              James M. Catterson
              Rolando T. Acosta,             Justices.

------------------------------------X
In the Matter of Application of

Go West Entertainment Inc.,
    Petitioner,

For a Judgment Pursuant to Article 78          M-2020
of the Civil Practice Law and Rules,
                                         Index No. 103482/08
            -against-

New York State Liquor Authority,
    Respondent.
------------------------------------X


        An Article 78 proceeding to review a determination of
respondent, having been transferred to this Court, pursuant to
CPLR 7804(g), by order of the Supreme Court, New York County,
entered on or about March 11, 2008,

        And an order of this Court having been entered on April 15,
2008 (M-1530), denying petitioner's motion for a stay of revocation
of its liquor license, pending hearing and determination of the
proceeding,

        And petitioner having moved for reconsideration/reargument
of the aforesaid motion (M-1530), and for a preference with respect
to the hearing of said proceeding,

        Now, upon reading and filing the papers with respect to the
motion, and due deliberation having been had thereon,

        It is ordered that the motion, to the extent it seeks
reconsideration/reargument, is denied.  So much of the motion which
seeks a preference in the hearing of the aforesaid proceeding is
denied without prejudice to renewal upon perfection of said
proceeding.

                        ENTER:

                                            Clerk.

Ex. I

## STATE OF NEW YORK
## DIVISION OF ALCOHOLIC BEVERAGE CONTROL

| 80 South Swan Street, Suite 900 | 317 Lenox Avenue | 535 Washington Street, Suite 303 |
|---|---|---|
| Albany, NY 12210-8002 | New York, NY 10027 | Buffalo, NY 14203 |

*******************************************************************************************

### IN THE MATTER OF PROCEEDINGS TO CANCEL OR REVOKE

**NOTICE OF PLEADING**

1143246, NEW YORK OP 1143246

1740-2008/Case No. 49305

333 EAST 60TH STREET INC
SCORES
333 E 60TH STREET
NEW YORK, NY 10022

PLEASE TAKE NOTICE, that pursuant to Section 118 of the Alcoholic Beverage Control Law you are required to answer by mail as provided below, or in person, at the office of the Division of Alcoholic Beverage Control, 80 South Swan Street, Suite 900, Albany, New York 12210-8002, on **05/16/2008**, at 11:00 AM, in connection with proceedings to cancel or revoke the above-referenced license, and to plead to the following charge(s):

1. That, pursuant to subdivision 5(a) of Section 126 of the Alcoholic Beverage Control Law, the licensee is forbidden to hold a license, to wit: on 3/5/08 the State Liquor Authority revoked for cause a license issued to the licensee, Richard K. Goldring (President) & Elliot Osher (Vice - President), under serial number New York OP 1144563.

PLEASE TAKE NOTICE THAT YOUR FAILURE TO PLEAD WILL BE DEEMED A "NO CONTEST" PLEA AND NO FURTHER HEARING WILL BE HELD.

PLEASE TAKE FURTHER NOTICE that you may be represented by counsel.

PLEASE TAKE FURTHER NOTICE that you may plead to the charge(s) by mail instead of by personal appearance provided that a letter signed by you or your attorney, setting forth your plea of "Not Guilty" or "No Contest" is received by the Office of Counsel of the Division of Alcoholic Beverage Control at the above Albany address on or before the pleading date specified above.

PLEASE TAKE FURTHER NOTICE that the maximum penalty may be a revocation and forfeiture of the Bond filed by you, and or a civil penalty. In addition, if the Authority revokes the license, the Authority may proscribe the issuance of a license at the premises for a period of two years from the date of revocation of the license.

PLEASE TAKE FURTHER NOTICE: If you plead not guilty to the charge(s), a hearing will thereafter be scheduled at which you may appear with counsel, produce witnesses, and introduce evidence in your behalf.

PURSUANT TO SECTION 301 of the State Administrative Procedure Act, interpreter services shall be made available to deaf persons, at no charge, by the Authority.

Date: 05/02/2008

Licensee's name and residence address
GOLDRING,RICHARD K
5 FOX CHASE DR, WATCHUNG, NJ 07069

DIVISION OF ALCOHOLIC BEVERAGE CONTROL

Office of Counsel
by: MaryJo Lattimore-Young
80 South Swan Street, Suite 900
Albany, New York 12210-8002

Licensee's Landlord
CLUB AT 60TH STREET INC
1396 VISTA MORAGA DR, LOS ANGELES, CA 90049

Notice to Landlord: As stated above, in the event the disposition of this case results in a Revocation of the license, the Authority may impose, as part of the penalty, a two year prohibition against the issuance of any alcoholic beverage license at these premises.

Tel: [518] 474-6750, Fax [518] 402-2304
E-mail: albanycounsel@abc.state.ny.us

Certified Mail # 7004 2510 0004 7871 3663

Ex. J