UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

333 EAST 60TH STREET, INC., d/b/a
Scores East,

                Plaintiff,                08 Civ. 4147 (RJS)

    -against-

NEW YORK STATE LIQUOR AUTHORITY,
DANIEL B. BOYLE, individually,
LAWRENCE J. GEDDA, individually,
NOREEN HEALEY, individually, and the
CITY OF NEW YORK,

                Defendants.

------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO THE CITY'S MOTION
TO DISMISS THE COMPLAINT AND
IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTIVE
RELIEF**


### Preliminary Statement

This memorandum of law is submitted in opposition to the City of New York's motion to dismiss the complaint, in opposition to the City's allegations of "fact" in contradiction of the facts as plead in the complaint, and in further support of its request for preliminary injunctive relief.

1

## The "facts" According to the City

Presumably on the pretense that the Court can consider on this 12(b)(6) motion "matters of public record" (Memorandum at 4), the City makes both completely unsupported, self-serving assertions of "fact" and interposes a declaration of a police lieutenant that is entirely false.

Thus at pages 7-8 of its memorandum the City announces that "Plaintiff prolonged the hearing of the revocation of the Scores West license into eight days of testimony". Not only is there now support in the record for the allegation that the hearing was "prolonged" by anyone, but the Plaintiff in this case (Scores East) was not the subject of the Scores West revocation.

More inappropriate is the City's recital:

> "In fact, police action to control vehicular traffic on those blocks Is taken for the protection of the large number of patrons of the man y Nightclubs located on those blocks, as detailed in the Declaration in Opposition to Plaintiff's Motion for Preliminary Injunction of Lieutenant Michael Costello, dated June 26, 2008, attached to the Van Meter Declaration as Exhibit G"

(Memorandum at 9).

As a threshold matter, the Costello declaration is impermissible on a 12(b)(6) motion to dismiss. Second, as made clear by the July 15, 2008, Osher affidavit, Costello's "facts" are false. As Elliot Osher (and the complaint) assert:

a. The streets giving access to Scores West were routinely barricaded shut from approximately 10:00 p.m. to 5:00 or 5:30 a.m.,

b. Routinely there was no pedestrian and/or vehicular traffic on either street and blockage of those streets only resulted from the presence of uniformed police officers, including those posted at the entrance of Scores West,

c. The streets were barricaded shut five or six nights of every week, not for limited periods of time,

d. The barricades of both streets occurred on many nights that the other clubs, referenced by the City, were not open for business, and,

e. The barricades of those streets routinely commenced prior to Scores West's opening, a circumstance that prohibited the principals of the corporate Plaintiff, employees and the female dancer from parking in proximity to the premises.

### POINT

### THE CITY IS ANSWERABLE IN DAMAGES AND SHOULD BE ENJOINED FROM INTERFERING THE SCORES EAST'S BUSINESS OPERATIONS

According to the complaint the City infiltrated Scores West, on the basis of an agreement with the SLA to extinguish that business operation, and by means of undercover police literally stole admission to the club, food and drink. During that entire period of time, as now acknowledged by the City and the SLA, no one was arrested for prostitution at the club.

One year prior to the supposed vice raid on the club, the police - - also acting in tandem with the SLA began blockading the club so as to drive down its profits and put it out of business. When that failed, on January 25, 2007, there miraculously appeared at the premises a female who supposedly offered to engage in an act of prostitution, the predicate for the SLA's triumphal march towards closure. The female, identified by the SLA as Nicole Green, was never employed by Scores West (July 15, 2008, Osher affidavit at para. 4).

At the outset of the SLA revocation proceeding with respect to Scores West, the SLA (with the active assistance of New York City police officers) excluded the public from the statutorily mandated "public hearing", then facilitated a police riot on SLA premises in which the principals of Scores were attacked, members of the public were denounced by the police as "prostitutes", and the public was falsely imprisoned for at least one hour.

On the basis of the Scores West revocation the SLA and the City of New York jointly announced that Scores East's liquor license was now going to be revoked. As a result Plaintiff commenced this proceeding seeking a preliminary injunction on First Amendment grounds.

The SLA at first indicated to the Court that a TRO was unnecessary because of the inherently slow administrative revocation process. It did a one hundred eighty degree about-face on July 8, 2008, suddenly scheduled the revocation hearing to begin on August 19, 2008, not in New York City where the Scores West proceeding was conducted, but in Albany County.

Presumably not to be outdone, and apparently oblivious to the self-serving claims advanced by the City in connection with the instant motions, the City's police have once again mobilized – effective July 14, 2008 – and are now blockading access to Scores East, both through the deployment of traffic control officer(s) and uniformed police officer in marked police units with their roof lights activated. In that connection at least one traffic enforcement officer was caught announcing to would-be Scores East patrons that Scores was no longer there and access to its location was limited to persons making "local deliveries" (July 15, 2008, Osher affidavit, para. 3).

Against this background no particular degree of insight is required to appreciate that the City's claim:

> "all the acts alleged by plaintiff as illegal involved Scores West, not Scores East, and there is no demonstration of any actual impact on plaintiff by any act of the City and no plausible allegation of violation of plaintiff's constitutional rights or chilling of plaintiff's exercise of such rights"

(Memorandum at 2), is simply false.[1]

The SLA, acting in concert with the City, admittedly regards Scores East and Scores West to be "one person" (SLA memorandum at 3). The conduct engaged in by the SLA and the City with respect to Scores West and Scores East is substantially the same and manifestly intended to drive both out of business. The police blockade at Scores West is now repeated with respect Scores East.

---

[1] In that connection and as made clear by the exhibit annexed to the Lovett affirmation of July 18, 2008, because of Defendants' conduct as engaged in with respect to Scores West, Scores East has now been denied an overdraft line of credit with one of its banks.

The SLA and City's joint announcement that they were going to revoke Scores East's liquor license is now being announced on the street by the Police Department as a fait accompli – Scores is no longer here.

And in that connection it is obvious that the police presence blockading access to Scores East is the product of one or both of two motivating factors: the intentionally chilling of First Amendment expressive conduct at Scores East and/or First Amendment retaliation predicated on Scores East's filing of this First Amendment grounded lawsuit. In either case, a claim is stated against the City.

Someone moot is the City's pronouncement:

> "Plaintiff has not asserted a single fact demonstrating any impact
> on Scores East's operations to date"

(Memorandum at 3). The police blockade of Scores East is that fact in and of itself.

No less probative is the City's claim (Memorandum at 3) that "[t]he allegation of possible future enforcement action by the City is speculative". Speculation is irrelevant. Enforcement action, albeit completely illegal, has already begun.

Equally meritless is the City's claim (Memorandum at 3): "the demand for relief sought by plaintiff, to enjoin the City...is without merit". On the contrary, the City's now blockade of Scores East and its false notification to would-be patrons that Scores East is no longer there, manifestly conduct indulged in cooperation with the SLA, warrants judicial intervention by way of injunctive relief.

The City's argument:

> "The complaint alleges a plan by the City, and agreement with the
> SLA, to force Scores East out of business, but provides no facts that

6

support such allegations"

(Memorandum at 6). The City's blockade of Scores East makes any such contention unworthy of consideration.

Also without merit is the City's apparently calculatedly misguided contention that Plaintiff is seeking an injunction to bar the City's revocation of its liquor license (Memorandum at 7). The City's involvement in both Scores West and now Scores East has been *inter alia* to force both clubs' closure through abuse of its police powers. That abuse is intended to be stopped as against the City by issuance of injunctive relief.

### Conclusion

The cross-motion should be denied, expedited discovery should be permitted, and a hearing on the application for preliminary injunctive relief should be granted.

Dated: White Plains, N.Y.
July 16, 2008

Jonathan Lovett (4854)
Attorney for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401