UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

333 EAST 60TH STREET, INC., d/b/a
Scores East,

                     Plaintiff,                  08 Civ. 4147 (RJS)

    -against-

NEW YORK STATE LIQUOR AUTHORITY,
DANIEL B. BOYLE, individually,
LAWRENCE J. GEDDA, individually,
NOREEN HEALEY, individually, and the
CITY OF NEW YORK,

                     Defendants.

------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO THE STATE LIQUOR
AUTHORITY'S CROSS-MOTION TO DISMISS
AND IN REPLY TO ITS OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF**

**Preliminary Statement**

This memorandum of law is submitted in opposition to Defendant New York State Liquor Authority's cross-motion to dismiss the complaint in this action and in reply to their opposition to Plaintiff's application for prospective, preliminary injunctive relief.

**Violation of the Court's Scheduling Order by the SLA**

On June 19, 2008, the Court issued a scheduling order with respect to Plaintiff's preliminary injunctive motion and Defendants' then-proposed cross-motions to dismiss.

1

In that connection Your Honor directed that "Defendants shall file and serve their opposition papers to plaintiff's motion for a preliminary injunction, as well as papers in support of a cross-motion, on or before July 8, 2008."

Apparently because the SLA is of the opinion that the Eleventh Amendment precludes the Court from exercising any jurisdiction over it (SLA Memorandum at Point I), the Authority simply disregarded the Court's order. Without authority or permission the SLA took it upon itself to default, untimely submitting its papers on July 9, 2008.

### The SLA's Demonstration of Bad Faith

At the time the Court heard the parties with respect to scheduling, the SLA affirmatively represented to the Court that it did not expect the at-issue license revocation proceeding against Scores East would commence in the immediate future. The Court, perhaps doubting the sincerity of that representation, made it clear that should a temporary restraining order be required, consideration would be given to an application for that relief.

Less than three weeks after the SLA made its representation to the Court on July 8, 2008, it issued a "Notice of Hearing" setting down the administrative hearing to "suspend, cancel or revoke" Plaintiff's license for August 19, 2008, at 10:00 a.m. in Albany, New York (*See* notice annexed to Affidavit of Elliot Osher dated July 15, 2008).

Under the circumstances Plaintiff respectfully requests the issuance of a temporary restraining order in order to preclude the SLA's anticipated proclamation that Scores East's request for prospective injunctive relief is academic because the SLA

2

expedited its administrative hearing and revoked the at-issue liquor license before this Court could determine the merits of the injunctive application.

## POINT I

### UNDER WELL-SETTLED SECOND CIRCUIT PRECEDENT THE ELEVENTH AMENDMENT IS NOT A BAR TO THE COURT'S ASSERTION OF JURISDICTION

In a sweeping, albeit erroneous, statement as to what the SLA regards to be outcome determinative law, the State claims:

> "The Eleventh Amendment to the United States Constitution bars Federal suits against a state and its agencies absent a state waiver of sovereign immunity or abrogation of the states' immunity by Congress pursuant to to §5...of the Fourteenth Amendment... Accordingly, as this Court has held, 'defendant, the New York State Liquor Authority, is an agency of the State of New York, and is therefore shielded from federal suits by the Eleventh Amendment' Rolle v. New York State Liquor Authority, 1006 U.S.C Dist. LEXUS 55821, *7, 2006 WL 2254807, *3 (Aug. 7, 2006)(Hon. Thomas P. Griesa)"

(Memorandum at 8-9).

The Eleventh Amendment is no bar to the relief requested here. Rolle is entirely irrelevant.

3

In State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) the Second Circuit reiterated a "well-known exception" regarding the Eleventh Amendment's otherwise bar to Federal Court jurisdiction against the States:

> "[A] plaintiff may sue a state official acting in his official capacity notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law."

Since that is the precise nature of the relief sought by Plaintiff here, the SLA's argument must be disregarded as meritless.

So too is the Authority's reliance upon Rolle, *supra*. For in that case the Plaintiff made claims against the New York State Liquor Authority under the Americans with Disabilities Act and the Age Discrimination in Employment Act. Since prospective injunctive relief was not at issue, the Court properly held that "the New York State Liquor Authority...is an agency of the State of New York, and is therefore shielded from federal suits by the Eleventh Amendment". *Id.* at *3. In short, Rolle stands for the general proposition that actions for damages against the States and/or their agencies are shielded by the Eleventh Amendment when prosecuted in Federal Court. It has nothing whatsoever to do with the exception to that general rule.

## POINT II

### THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS BOYLE AND HEALEY

According to the SLA "plaintiff must concede that Boyle, Gedda and Nealey have not been served personally...According to the Court's docket, no return of service has been filed on their behalf" (Memorandum at 10).

4

We suggest that the SLA take another look at the docket sheet. Both Boyle and Nealey were in fact served. Gedda, who is a former SLA commissioner, was not.

## POINT III

## YOUNGER ABSTENTION IS IRRELEVANT

As made clear by the complaint, this is a case where the SLA and the New York City Police have targeted two jointly owned gentlemen's clubs (Scores East and Scores West), in subjective bad faith.

In that connection the City's police blockaded Scores West to drive it out of business and when that failed they conducted a "raid" during which a female never employed by Scores West was charged with and convicted of "prostitution".

On that predicate the SLA promptly commenced an administrative proceeding to revoke Scores West's liquor license based upon that supposed conviction, barred the conduct of a public hearing with the assistance of the police, facilitated the Police Department's literally engaging in a riot at SLA headquarters in New York City at the commencement of the revocation hearing - - assaulting the principals of both clubs, falsely accusing members of the public who intended to witness the hearing of being "prostitutes", falsely imprisoning them along with their spouses and employees, confiscating/stealing cell phone video images of the riot - - and then revoking the Scores West liquor license upon a fabricated claim of prostitution.

As to Scores East the SLA and the City are now in the process of piggy-backing on the Scores West revocation. As in the case of Scores West the City of New York is once again employing its blockade tactics (Affidavit of Elliot Osher dated July 15, 2008,

5

at 3) - - this time commencing July 14th through a traffic control officer and a uniformed police officer stationed outside the club, with the traffic control officer falsely announcing to would-be patrons that Scores (East) is no longer there. The uniformed officer, in a marked police car, diverted would-be patrons by blocking access. In that connection the traffic control officer expressly admitted that he was diverting traffic specifically because of "Scores".

In short, since the SLA and the City's subjective bad faith that motivated the license revocation of Scores West is now running amok at Scores East, the City's premature announcement of Scores East's demise speaks volumes. Just as in the case of Scores West, the outcome of the SLA hearing process is pre-ordained in accordance with the Defendants' jointly charted course.

Since on these facts it is readily apparent that the revocation proceedings in both cases will of necessity fail - - for lack of proof and violations of Plaintiffs rights as guaranteed by the First Amendment, Younger abstention is irrelevant.

For as the Second Circuit instructed:

> ". . .a refusal to abstain would be justified where a 'proceeding has been brought to retaliate for or to deter Constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass'".

Diamond "D" Construction Corp. v. McGowan, 282 F.3d 191, 199 (2d Cir. 2002); Kern v. Clark, 331 F.3d 9, 12 (2d Cir. 2003). Here the State has no valid and/or compelling state interest in prosecuting in subjective bad faith an administrative proceeding that is

6

motivated by an intent to violate a licensee's right to engage in First Amendment protected expressive conduct.

As to the SLA's bald assertion that Scores West and Scores East principals' First Amendment claims should have been raised in the context of the Scores West administrative proceedings" (Memorandum at 11), precious little need be said. It is axiomatic that exhaustion of administrative remedies is unnecessary as a pre-condition to a party's assertion in court that the administrative agency itself violated that party's constitutional rights. Watergate II Apartments v. Buffalo Sewer Authority, 46 N.Y.2d 52, 57 (1978). It is also axiomatic that there is no administrative exhaustion requirement as a condition to the filing of a civil rights claim under 42 U.S.C. §1983. Porter v. Nussle, 534 U.S. 516, 524 (2002); Patsy v. Board of Regents of Florida, 457 U.S. 496, 516 (1982).

In any event, the SLA is hardly empowered to adjudicate Scores' First Amendment rights and/or make a competent determination as to its own violations of those rights - - especially in an administrative kangaroo court, complete with an SLA facilitated police riot, violation of Scores West's absolute right to a public (due process) hearing, and fabricated "evidence".

Utterly without merit is the SLA's argument (Memorandum at 12) that:

> "Plaintiff's only defense against abstention is that the ABC §126(5)(a) charges against Scores East were brought for 'no legitimate purpose' and with 'malevolent intent'. . . This proposition fails because there is no showing – as a matter of fact or law – that the SLA enjoys any *discretion* in the enforcement of ABC §126(5)(a). The revocation provisions of that section certainly appear to be mandatory on their

>face. Nor does ABC §126(5)(a) become discretionary by reason of the fact that the SLA interprets the statute as calling for a full-blown adjudicatory hearing".

(italics in original).

We disagree with respect to the SLA's claim that Section 1265)(a) is non-discretionary. The SLA's regulatory scheme makes this conclusion inescapable despite what the SLA self-servingly characterizes as an "appear[ance]" to the contrary.

At Part 53 of the New York State Codes Rules and Regulations (11 NYCRR §53, entitled "Causes for Revocation", Section 53.1 provides in quite unmistakable terms:

> "Any license or permit issued pursuant to the Alcohol Beverage Control Law **may** be revoked, cancelled or suspending for the following causes:

(emphasis added).

Section 54.4(g), pertaining to "Conduct of hearings", provides in pertinent respect that following the conduct of an administrative proceeding to revoke, cancel or suspend a liquor license the hearing officer "shall make, in writing, his findings. . .and shall, **at his option**, recommend to the authority the action to be taken against the licensee" (emphasis added).

And Section 54.6, concerning "Penalties after hearing" provides at subdivision "a" that:

> "After charges have been sustained in a revocation proceeding, the authority **may** direct revocation, cancellation or suspension of the license. . ."

(emphasis added).

In sum it is not the SLA's mere abstract "interpret[ation]" of Section 126(5)(a) that insures that revocation is not mandated as a matter of fact or law. Rather the SLA's regulations insure that no outcome is dictated on a non-discretionary basis. May manifestly means may – not must.

Against this background Plaintiff's contention that the Scores East revocation proceeding was brought for no legitimate state purpose and with malevolent intent presents issues of fact that cannot be disposed of on paper.

Indeed since the Court is presently considering a motion to dismiss on the face of the complaint, these presently incontrovertible factual allegations - - rather than the SLA's unsworn, self-serving assertions in a memorandum of law - - must carry the day.

## POINT IV

### LEAVE TO AMEND THE COMPLAINT TO NAME THE PRESENTLY INDIVIDUALLY NAMED DEFENDANTS IN THEIR OFFICIAL CAPACITIES SHOULD BE GRANTED

The SLA contends (Memorandum at IV) and we do not now dispute that Boyle and Nealey should have been named in their official capacities. In that connection, leave to amend the summons/complaint should be granted to accomplish that objective. FRCP 15.

## POINT V

## PLAINTIFF HAS DEMONSTRATED
## A LIKELIHOOD OF SUCCESS ON
## THE MERITS OF ITS CLAIM

Trivializing the complaint, the factual allegations of which are presently incontrovertible, the SLA disingenuously announces that "Plaintiff does no more on the present motion than characterize the anticipated result of the SLA's proceeding...as a 'prior restraint on speech – namely topless dancing (Memorandum at 14). We disagree.

The complaint sets forth in substantial factual detail how the New York City police, acting in concert with the SLA, targeted first Scores West and then Scores East [both of which "corporate entitles effectively constitute 'one person'" for purposes of license revocation as conceded by the SLA (Memorandum at 3] because of their First Amendment protected expressive conduct, topless dancing.[1]

First the City blockaded the streets giving access to Scores West, prohibiting vehicular and pedestrian traffic and driving down Scores West's patronage and profits. The City has now begun, even in the face of this pending application for judicial intervention, the same blockade routine (Elliot Osher Affidavit of July 15, 2008) with one of New York's "finest" announcing (presumably because the SLA's kangaroo administrative court is already in motion) the SLA's pre-ordained conclusion – Scores is no longer here.

---

[1] While the SLA expressly concedes that it views both Scores East and Scores West to be "one person", the City apparently regards the corporate owners of these premises to be interchangeable. Thus in the City's memorandum of law it is argued that "Plaintiff", that is the corporate entity that operates Scores East "prolonged the hearing of the revocation of the Scores West license into eight days of testimony, and it appears that plaintiff is seeking to revisit those same issues". While that perceived "single person" supports the inference that both Scores West and East were sequentially targeted because of the First Amendment expressive conduct engaged in at both premises, the linkage between the two corporate owners has even been a motivating factor with respect to one banking institution used by Scores East. Specifically because of Scores West's license revocation proceeding The Berkshire Bank has now revoked Scores East's overdraft protection line of credit (Exhibit annexed to Lovett affirmation).

10

Following the Scores West blockade, which included posting police officers outside the entrance to that premises, the SLA commenced a revocation proceeding heralded by the flat out denial to Scores West's principals of a public hearing, even though such a hearing is mandated by law. In that connection New York City police assisted in barring the public's attendance at the hearing.

Following that violation of law, the SLA permitted the City to falsely imprison otherwise members of the public on a different floor from the hearing, assaulting some of them, seizing and destroying cell camera video depictions of the riot, falsely accusing them of being "prostitutes", and chilling them all in their advocacy on behalf of Scores West and against the SLA.

Then on the false claim that a female - - never employed by Scores West - - engaged in prostitution on the night of January 25, 2007, according to police officers who collectively stole services from that business for approximately one year, the SLA revoked its liquor license on the basis of a constitutionally impermissible basis – First Amendment protected conduct.

Against this background the SLA's reliance upon Arcara v. Cloud Books, Inc., 478 U.S. 697 (1986)(Memorandum at 14-15) is simply misplaced. The "prostitution" claim as to Scores West was false, the motive in revoking its liquor license was premised upon First Amendment retaliatory animus, and at such time as there is state court review of the revocation proceeding there of necessity will be a reversal.

Permitting the SLA to prosecute its piggy-back claim against Scores East simply should not be permitted, at least without Plaintiff first being accorded limited/expedited discovery and a plenary hearing on its preliminary injunctive application.

11

## Conclusion

The cross-motion should be denied, expedited discovery should be permitted, and a hearing on the application for preliminary injunctive relief should be granted.

Dated: White Plains, N.Y.
      July 18, 2008

*[signature]*

Jonathan Lovett (4854)
Attorney for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401